GULOTTA, Judge.
Michael Seuzeneau, a New Orleans firefighter, appeals from the affirmation by the trial court of a denial of his claim for a disability pension under LSA-R.S. 33:2113[1] *440 by the Board of Trustees of the Firefighters Pension and Relief Fund for the City of New Orleans (the Board).
The twenty-nine-year-old plaintiff initially sustained a job-related back injury in mid-September, 1978, when, according to his testimony, his back “snapped” while he was lifting a stretcher carrying an individual weighing two-hundred-seventy pounds. Plaintiff remained out of work approximately six weeks, but returned to duty after being evaluated and released by Dr. Chris J. DiGrado, an orthopedic surgeon.
In April, 1979, plaintiff reinjured his back when carrying a forty-five pound pump while fighting a grass fire. Treatment by Dr. DiGrado included injection, medication, therapy, and a lumbar corset over a four month period. In an August 8,1979 report, Dr. DiGrado found no objective physical findings and recommended plaintiff return to work on August 18, 1979.
Plaintiff was seen on August 3, 1979 by Dr. George D.B. Berkett, an orthopedic sur- ' geon, who stated in his report that he found no organic basis for Seuzeneau’s complaints.
Because of continued lower back pain, plaintiff saw Dr. Victor P. Chisesi, an orthopedic surgeon on August 15,1979. Dr. Chi-sesi found palpable muscle spasm in the left low back and was of the impression that plaintiff had a “herniated nucleus pulposis at the L4-L5 level in the left side of his low back.” He prescribed medication, bed rest, and heat treatment.
On September 5, 1979, plaintiff was examined by Dr. Robert L. Applebaum, a neurological surgeon, who found no evidence of disease or damage involving the spinal cord and nerve roots and saw no reason, from a neurologic point of view, why plaintiff could not return to his usual and customary occupation. Dr. Applebaum further noted in his report, however, that should plaintiff’s back pain persist, follow-up orthopedic evaluation might be indicated.
Following continued complaints, Dr. Chi-sesi admitted plaintiff to Mercy Hospital on September 10,1979 where he was placed in traction until September 23. A lumbar my-elogram and discogram were considered normal and plaintiff was discharged from the hospital on September 25. Although “at a loss” to explain Seuzeneau’s complaints of low back pain and sciatica, Dr. Chisesi indicated that perhaps plaintiff had “some occult nerve root compression in his low back” and suggested a neurosurgical consultation.
Examination by Dr. David M. Jarrott, a neurosurgeon, on three visits in December 1979 and January, 1980, revealed tenderness at the L-5 spinous process and a “very impressive” straight leg raising test supporting a finding of a ruptured disc. After reviewing a September, 1979 myelogram and discogram, Dr. Jarrott concluded there was an L-5/S-1 disc rupture with impingement of the L-5 nerve and possible irritation of the S-l.
Dr. Jarrott suggested that a partial lami-nectomy and partial foraminotomy might relieve pressure on the nerve and allow plaintiff to increase his activity. In a written report to the fire department on February 9,1980, and at the pension hearing, Dr. Jarrott considered that plaintiff’s prognosis for returning to firefighting “was probably dim”. According to this expert, without the operation plaintiff’s chance of returning to heavy work was “zero”. Even with surgery, Dr. Jarrott felt that plaintiff had less than a fifty percent chance of returning to the heavy labor required of a fireman.
On March 4, 1980, in a letter to Superintendent William McCrossen of the New Orleans Fire Department, Dr. Jack P. Ruli, the department physician, stated that plaintiff “has been disabled with the diagnosis of lumbar disc syndrome” and recommended that he be placed on pension.
The Board referred plaintiff to Dr. Homer D. Kirgis, a neurosurgeon on April 1, *441 1980. Dr. Kirgis stated in a report that plaintiff presented “a history very consistent with the diagnosis of his having sustained a ruptured lower lumber interverte-bral disc”. In a May 2,1980 response to the Board’s request to be “more specific” concerning the permanency of plaintiff’s disability, Dr. Kirgis stated:
“I am sorry that I cannot be more specific. The history suggest that he has a ruptured lower lumbar disc and it also suggests that he does not tolerate the work required by a fireman. Therefore, apparently he is at present disabled for perfroming the duties of an active firefighter. I cannot state, however, that as more time passes he would not improve and become able to perform such duties.”
On June 23, 1980 plaintiff was terminated from employment with the fire department. The superintendent noted that plaintiff’s physician had advised plaintiff would “no longer be able to perform fire duty”.
At the hearing before the pension board on September 3, 1980, Susan L. Smith, an occupational therapist and vocational evaluator, stated that, based on her examination and evaluation of plaintiff on August 18, 1980; he “is unable to handle more than up to about thirty pounds on an occasional basis”, and could not meet the physical requirements of a firefighter or an auto mechanic.[2] She stated that Seuzeneau could not stoop, handle weights or do prolonged sitting or standing.
Plaintiff testified that he had not done any type of work since April, 1979, and could no longer engage in athletic activities, lawn cutting chores or automotive work. He continues to go shrimping, but relies on friends to do heavy lifting. Seuzeneau stated that he never lifts anything more than 25 pounds. His testimony in this regard was corroborated by that of his wife, father, brother and friends.
Seuzeneau’s testimony concerning his inability to engage in strenuous physical activities was disputed by his neighbor, Daniel Patrick Hunter. Hunter claimed to have seen plaintiff engage in various activities including lifting a 600 pound aluminum boat with the help of friends, nailing fence boards, climbing a ladder while carrying 40-pound bundles of shingles, bending and nailing roof shingles, digging a trench and carrying rigging and ice chests in his shrimping activity. Hunter had volunteered his testimony because he felt that plaintiff was “ripping off the City” by applying for a pension. Photographs taken by Hunter and his wife reportedly show plaintiff engaged in physical activities since the accident.[3]
Hunter’s testimony was disputed by plaintiff and his friends who denied plaintiff had engaged in any heavy work since the accident. It is also clear that Hunter and plaintiff bore resentment toward each other resulting from a boundary dispute and the filing of a successful lawsuit by plaintiff against Hunter.
Although the reports of Doctors DiGrado, Berkett and Applebaum are not supportive of a disability finding, they do not rule out the possibility of further evaluation based on plaintiff’s continued complaints of pain. The evaluations by Drs. Jarrott, Ruli and Kirgis are supportive of a conclusion that plaintiff has suffered a herniated lumbar disc and can no longer work as a fireman. The undisputed testimony of the occupational therapist indicates that plaintiff is unable to handle more than thirty pounds on an occasional basis.
The medical evidence considered, we conclude that the Board manifestly erred in its finding that Seuzeneau was not disabled.[4] *442 We conclude also the trial judge erred in upholding the Board’s determination.
In so holding, we are mindful that it is not the province of this court to substitute its judgment for that of the Board.[5] Nonetheless, where the record clearly supports a conclusion that the Board manifestly erred, it is the duty of this court to set aside the Board’s determination.
Having concluded that Suzeneau is disabled from performing his duties as a firefighter, we are next concerned with the extent of that disability.
LSA-R.S. § 38:2113 provides entitlement to a pension of two-thirds of the claimant’s monthly salary at the date of retirement if the claimant is “physically or mentally disabled or incapacitated from performing his duties as a member of the fire department, or is unable to hold any other meaningful and gainful employment, by reason of service in the fire department....” On the other hand, the claimant is entitled to a monthly pension of one-half his monthly salary at the date of his retirement if he is “totally, permanently, physically or mentally disabled for service in said fire department by reason of service therein, but physically and mentally capable and able to do and perform work of any other reasonable kind or character.... ”
It is clear that plaintiff’s job-related injury incapacitates him from meeting the physical requirements of the job of a firefighter, an automobile mechanic, or other work of a similar character. He is unable to lift more than 30 pounds on an occasional basis and cannot engage in prologed sitting or standing. Dr. Jarrott testified that the purpose of the proposed surgery is to make plaintiff more able to do some kind of light assignment and to make him more comfortable in activities of a limited scope.
Under the circumstances, we conclude the medical evidence suggests a finding that plaintiff is disabled from performing his duties as a fireman or from doing any work of a reasonable character. Thus, he is entitled to a monthly pension at the two-thirds’ rate. We note further, however, that the Board, pursuant to LSA-R.S. 33:2113, may order future periodic examinations to determine if the claimant is qualified for active duty or is capable of performing work “of any other reasonable kind or character.”
Accordingly, the judgment of the trial court is reversed and set aside. Judgment is now rendered finding plaintiff, Michael A. Seuzeneau, disabled within the meaning of LSA-R.S. 33:2113 and entitled to a disability pension payable in monthly installments from the date of his retirement in an amount equal to two-thirds of the monthly compensation allowed him at the date of his dismissal from the fire department, June 23,1980, presumably the “date of his retirement” within the meaning of the statute.[6]
REVERSED AND RENDERED.

. LSA-R.S. 33:2113 reads, in pertinent part: If any member of the fire department of the city, while in the performance of his duty, becomes and is found upon examination by the department physician to be physically or mentally permanently disabled and incapacitated from performing his duties as a member of the fire department, or is unable to hold any other meaningful and gainful employment, by reason of service in the fire department, the board ... of trustees by majority vote of its members shall determine whether or not the member should be retired for disability.... When the board of trustees determines that the member should be retired for disability incurred in the performance of his duty or service in the fire department, it shall retire the member, place his name on the pension roll, and order the immediate payment in monthly installments to him from the pension and relief fund of a sum equal to two-thirds the monthly compensation allowed him as salary at the date of his retirement, or the amount provided in R.S. 33:2117, whichever is greater, provided the other conditions of R.S. 33:2117 are met. If any member of the fire department while in the active service of said fire department become and be found to be totally, permanently, physically or mentally disabled for service in said fire department by reason of service therein, but physically and mentally capable and able to do and perform work of any other reasonable kind or character and be so found by the said board of trustees, the board shall retire the member, *440 place his name on the pension roll, and order immediate payment in monthly installments to him from the pension and relief fund in a sum equal to one-half the monthly compensation allowed him as salary at the date of his retirement or the amount provided in R.S. 33:2117, whichever is greater, provided the other conditions of R.S. 33:2117 are met.

. Plaintiff had been employed as an auto mechanic prior to his employment as a firefighter.

. Because of the unclarity of these photographs, they are of little or no value.

. LSA-R.S. 49:964(G)(5) & (6) read as follows:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

*442 (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues. Acts. 1966, No. 382, § 14, eff. July 1, 1967

. Buras v. Board of Trustees of Police Pension, 367 So.2d 849 (La.1979); Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330 (La.1980).

. LSA-R.S. 33:2113 provides that upon finding a disability the Board “shall retire the member, place his name on the pension roll, and order the immediate payment in monthly installments” of his pension based on “the monthly compensation allowed him as a salary at the date of his retirement....” In our case, the Board, by denying the claim, never “retired” Seuzeneau. Accordingly, we deem the date of plaintiffs dismissal from the fire department to be his “date of retirement” for purposes of his pension under LSA-R.S. 33:2113.